IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | **8:23-CR-86** |
| vs. | **SEALED ORDER ON MOTION FOR REVOCATION OF A RELEASE ORDER** |
| RICHARD WESLEY MARSHALL, | |
| Defendant. | |

This matter is before the Court on the Government's Motion to Review and Revoke the Magistrate Judge's Order Releasing Defendant Richard Wesley Marshall pending trial. Filing 100. The Court expressly invited both parties to state whether they desired a hearing before the Court issued its ruling on this Motion. *See* Filing 149 at 4. Neither party requested one. *See generally* Filing 168; Filing 179 ("[C]ounsel for the defendant is not specifically requesting a hearing but rather leaves that to the Court's discretion"). After conducting a *de novo* review of the matter and considering additional submissions from the parties, the Court concludes that a hearing is unnecessary. For the reasons explained below, the Court grants the Government's Motion to Revoke the Magistrate Judge's Order Releasing Marshall. Filing 100. Marshall shall remain detained pending trial.

## I.    BACKGROUND

### A.  Procedural Background

The Court previously recounted background information pertinent to this matter in prior orders dated December 15, 2023 (Filing 102), January 11, 2024 (Filing 149), and January 19, 2024 (Filing 171). The Court will repeat and consolidate some of that same background information here in this Order for context.

1

On November 14, 2023, a Grand Jury in the District of Nebraska returned a three-count Superseding Indictment against several defendants, including Richard Wesley Marshall. Filing 75 at 1.[1] Marshall was arrested nearly a month later on December 12, 2023, in California, and he appeared the next day before United States Magistrate Judge Jacqueline Chooljian in the Central District of California. Filing 120-2 at 1; Filing 120-8. Although the Government requested that Marshall remain detained pending trial, Magistrate Judge Chooljian denied the Government's request and permitted Marshall to remain out on bond subject to certain conditions. Filing 102. On December 15, 2023, the Government moved for an emergency stay of Magistrate Judge Chooljian's decision to release Marshall on bond pending trial. Filing 100. This Court granted the Government's Motion for a stay that day. Filing 102. However, the Court noted in its Order that the stay was for the purpose of allowing it to conduct a *de novo* review of the Magistrate Judge's release decision. Filing 102 at 1.

After the Court entered its stay, Marshall retained counsel to represent him in the above-captioned case before this Court, and this Court received filings that were docketed in the United States District Court for the Central District of California where Magistrate Judge Chooljian sits. *See* Fed. R. Crim. P. 5(c)(3)(E); Filing 106; Filing 120. On January 8, 2024, Marshall's counsel filed a Response to the Government's Motion to Revoke Release. Filing 134. Marshall's counsel also filed a written waiver of personal appearance at his arraignment. Filing 137. This waiver was accepted by the Magistrate Judge assigned to this case in the United States District Court for the

---

[1] Count I of the Superseding Indictment alleges that Marshall and others conspired to distribute and possess with intent to distribute 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana and a mixture, compound, and preparation containing THC. Filing 75 at 1. Count II of the Superseding Indictment alleges that the Defendant and others engaged in money laundering to conceal and disguise the nature, location, and source of unlawful activity. Filing 75 at 2. Count III of the Superseding Indictment alleges that Marshall and others conspired to launder money. Filing 75 at 2–3.

District of Nebraska. Filing 137 at 1. Accordingly, Marshall's "not guilty plea to all counts [was] entered on record with the Clerk of Court" on January 8, 2024. Filing 137 at 1.

On January 11, 2024, this Court issued an Order in which it explained "that in order to conduct a proper *de novo* review of the Magistrate Judge's decision to release Marshall, additional information [was] required." Filing 149 at 2. The Court therefore directed both counsel for the Government and counsel for Marshall "to submit any and all evidence that they wish[ed] for this Court to consider in ruling on this matter" no later than January 18, 2024. *See* Filing 149 at 3. The Court also specifically instructed the Government to provide the Court with either a transcript or an audio recording of Marshall's hearing before Magistrate Judge Chooljian by this same date. Filing 149 at 3–4. Finally, the Court directed both parties to advise the Court in writing whether they requested a hearing on the matter or whether they wished for the Court to rule based solely on the evidence submitted and the matters contained in the record. Filing 149 at 4.

The Government complied with this Court's directive and timely submitted evidence in relation to this matter as well as an audio recording of Marshall's hearing before Magistrate Judge Chooljian. *See* Filing 168; Filing 173; Filing 175; Filing 176. The Government did not specifically request that the Court hold a hearing. *See* Filing 168 at 1. On January 18, 2024, Marshall filed a Motion seeking an extension of time to comply with this Court's January 11, 2024 Order (*i.e.*, Filing 149). Filing 170. The Court granted Marshall's request for a week-long extension. Filing 171. Thereafter, on January 26, 2024, Marshall submitted a filing captioned, "Response to the Court's Order Regarding Motion to Revoke Order of Release." Filing 179 at 1. Marshall separately submitted a filing captioned, "Motion to Amend Release Order" that same day as well. Filing 180 at 1. Marshall did not request a hearing in either of these filings. *See generally* Filing 179; Filing 180. Instead, Marshall's "Response to the Court's Order Regarding Motion to Revoke Order of

Release" states, "[C]ounsel for the defendant is not specifically requesting a hearing but rather leaves that to the Court's discretion." Filing 179 at 2.

With this matter having been fully submitted and briefed as of January 25, 2024, the Court can now conduct a proper *de novo* review.

## B. Factual Background

As the Superseding Indictment reveals, Marshall and many others are alleged to have engaged in a drug trafficking conspiracy spanning over two-decades in length that involved, *inter alia*, over 1000 kilograms of a mixture and substance containing a detectable amount of marijuana. Filing 75 at 1–2. Marshall is also alleged to have engaged in money laundering related to the drug trafficking conspiracy. Filing 75 at 2–3. According to the Government, "[t]he investigation involving [Marshall] revealed that FastBox LLC, was a company created for the sole purpose of shipping marijuana products and marijuana proceeds." Filing 168 at 1. The Government also states that during their investigation, agents identified a FastBox employee who "was in charge of accepting marijuana loads in Baltimore Maryland, New York City, NY, and Boston, MA." Filing 168 at 1. According to the Government, the FastBox employee said that he would meet with Marshall (and sometimes another individual working on behalf of Marshall) "to pick up the marijuana after it arrived in Baltimore." Filing 168 at 1. The FastBox employee indicated that Marshall's marijuana proceeds were then transported by either Marshall (or other named individuals) to the FastBox employee "who was then responsible for loading the proceeds into a FastBox container and shipping it back to Los Angeles." Filing 168 at 2.

The Government included in its January 18, 2024, submission to the Court a spreadsheet showing Southwest Airlines tickets Marshall purchased to and/or from Maryland between October of 2015 and June of 2020 that corresponded close in time with FastBox loads that were shipped to

Maryland via third-party transportation companies. *See* Filing 168 at 2–5. The Government supports the contents of this spreadsheet by citing to evidence it separately submitted. *See* Filing 168 at 5 (citing Filing 169-4); Filing 168 at 5 (citing Filing 169-1; Filing 169-2). The Government submits that this spreadsheet does "NOT show all of [Marshall's] travel to Maryland, but only those that coincide with known FastBox third party shipping evidence to Maryland." Filing 168 at 4–5. The spreadsheet shows at least 15 Southwest Airlines flights booked by Marshall over the course of about five years that corresponded close in time with known FastBox deliveries to Maryland. *See* Filing 168 at 2–4.

The Government further states that "[b]etween 2013 and 2022, [Marshall] would use a Cooperating Witness to move his illicit marijuana proceedings into the banking system[.]" Filing 168 at 5 (citing Filing 169-6). According to the Government, the Cooperating Witness "accepted approximately $2,865,000 in cash from [Marshall] which was used to purchase five high end sports cars" including one sports car that sold for $1,360,000 in 2017. Filing 168 at 5–6. The Government notes that Marshall has purchased properties in Los Angeles, New York City, and Nashville. Filing 168 at 6. According to the Government, these properties "are deeded in the name of a trust" or "LLC" which is a tactic other co-conspirators in this case have used to purchase properties with illicit proceeds in order to conceal the origins of the purchasing funds and "hide the owner's true identity." Filing 168 at 6.

The Government contends that based on a number of factors, including "Marshall's travels, evidence of undeclared assets that could be used to abscond, lack of a permanent residence, and [lack of] prior candor with pretrial services and the court . . . Marshall is a flight risk and a danger to the community[.]" Filing 168 at 7. The Government also insists "there are no conditions or combination of conditions that will reasonably assure Marshall's appearance as required for the

safety of the community." Filing 168 at 7. The Government further advises the Court that in the summer of 2020, one of Marshall's co-conspirators directed members of the organization to flee in the event they were charged and, in fact, "two of the initially five charged defendants absconded after being notified they had been charged." Filing 100 at 7. According to the Government's December 15, 2023, filing, "One is still a fugitive, the other took his own life when the Marshals were attempting to arrest him." Filing 100 at 7.

## II.    APPLICABLE STANDARDS

When a defendant is ordered released by a federal judge in another jurisdiction, the Government may move to revoke the order in the district court that has original jurisdiction over the charged offenses. 18 U.S.C. § 3145(a)(1); *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 495 (W.D. Tex. 2022) (citing 18 U.S.C. § 3145(a)(1) and cases supporting the proposition that "the district court in the district where charges are pending can enter a stay of a release order issued by a magistrate judge of a different jurisdiction"). The district court's review of the order releasing the defendant is *de novo*. *See United States v. Maull*, 773 F.2d 1479, 1481–82 (8th Cir. 1985).

Title 18, United States Code, Section 3142 governs the release or detention of a defendant pending trial. The statute lists four options for a court: (1) release the defendant on personal recognizance or with an unsecured appearance bond; (2) release the defendant on conditions; (3) temporarily detain the defendant to permit revocation of conditional release, deportation, or exclusion; or (4) detain the defendant. *See* 18 U.S.C. § 3142(a). The Government may move for detention under two scenarios: (1) when the case involves one of the five categories of offenses listed in 18 U.S.C. § 3142(f)(1); or (2) when the case involves a "serious risk" the person will flee,

obstruct justice, or intimidate jurors or witnesses. 18 U.S.C. § 3142(f)(1)–(2).[2] Two of the categories set forth in 18 U.S.C. § 3142(f)(1) are implicated here. Marshall is charged in Count I with an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" 18 U.S.C. § 3142(f)(1)(C); *see also* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii); 21 U.S.C. § 846. Additionally, because Count I carries a maximum sentence of life imprisonment, 18 U.S.C. § 3142(f)(1)(B) also applies.[3] *See* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii); 21 U.S.C. § 846.

To detain the defendant, the Government must prove by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required" or show by clear and convincing evidence that no condition or combination of conditions will reasonably assure "the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f)(2); *see United States v. Orta*, 760 F.2d 887, 891 n. 20 (8th Cir. 1985) (observing that § 3142 does not provide a standard of proof for risk of flight and holding that the preponderance of evidence standard applies). Nevertheless, the statute contains a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" one of several enumerated

---

[2] In *United States v. Cook*, the Eighth Circuit recently noted that " "[b]y including a reference to the risk of nonappearance, a critical § 3142(e)(1) issue, the district court clarified that it had separately considered two issues, risk of flight and risk of nonappearance." 87 F.4th 920, 924 (8th Cir. 2023). In Marshall's case, both 18 U.S.C. §§ 3142(f)(1) and (f)(2) are implicated. *See* Filing 120 at 3–4.

[3] Pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii), any person who distributes or possesses with the intent to distribute 1000 kilograms of a mixture or substance containing a detectable amount of marihuana "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life" except as otherwise set forth in the statute. Count I charges Marshall with conspiracy to commit these offenses; however, the Controlled Substances Act makes clear that "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

offenses. 18 U.S.C. § 3142(e)(3). Relevant here, the presumption applies to offenses "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substance Act (21 U.S.C. 801 et seq.)[.]" 18 U.S.C. § 3142(e)(3)(A).[4] "In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). If the defendant successfully rebuts the presumption, it does not go away but instead becomes another factor for the court to consider when making its ruling. *See id.*

So while this presumption remains relevant to the analysis, in circumstances where it is adequately rebutted by the defendant the ultimate question then becomes whether the Government has shown "that the defendant either poses a substantial flight risk or poses a danger to other or the community." *United States v. Leyba*, 104 F. Supp. 2d 1182, 1183 (S.D. Iowa 2000). "Detention can be based on either showing, but both are not required." *Id.*; *United States v. Solis*, 453 F. Supp. 3d 1161, 1164 (S.D. Iowa 2020) ("[E]ither danger to the community or risk of flight is sufficient to authorize detention") (quoting *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986))). These two bases for pretrial detention are subject to different evidentiary standards. *See Orta*, 760 F.2d at 891 n.20. "[T]he government's evidentiary burden is lesser to prove a flight risk than to prove a risk of harm." *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003). Specifically, risk of harm requires the government to show "by clear and convincing evidence that no release condition or set of release conditions will *reasonably assure* the safety of the community" whereas

---

[4] *See also United States v. Vang*, 779 F. App'x 426, 427 (8th Cir. 2019) (per curiam) ("Where, as here, a defendant is charged with 'an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act' . . . a rebuttable presumption exists in favor of detention if the district court finds probable cause that the defendant committed the alleged crimes").

risk of flight requires the government to show "by a preponderance of the evidence that no condition or set of conditions under [18 U.S.C. § 3142(c)] will *reasonably assure* the defendant's appearance[.]" *See Kisling*, 334 F.3d at 735 (emphasis in original); *accord Abad*, 350 F.3d at 797.

In conducting this analysis and making its determination to detain or release the defendant, a court considers (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including a history of drug or alcohol abuse, criminal history, or a record involving the failure to appear at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

## III.    DISCUSSION

After listening to the audio of Marshall's hearing before Magistrate Judge Chooljian,[5] considering the information presented by the parties, and reviewing all other relevant portions of the record, the Court concludes that the Government has met its burden of proving "by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* [Marshall's] appearance" given the significant flight risk he presents. *Abad*, 350 F.3d at 797 (emphasis in original); *Cook*, 87 F.4th at 924. For the reasons explained in further detail below, the Court concludes that Marshall shall be detained pending trial.

### A.  The Statutory Presumption in Favor of Detention Applies

At the outset, the Court finds probable cause to believe that Marshall committed the offenses alleged in the Superseding Indictment. The evidence that has been provided to the Court,

---

[5] The Court notes that this hearing lasted approximately 24 minutes and ten seconds in length.

as well as the fact that the Grand Jury returned an indictment on these offenses, establish probable cause. *See United States v. Bravo*, No. 8:13CR138 2013 WL 3984608 (D. Neb. Aug. 2, 2013) (noting that "the majority of Circuit Courts of Appeal agree than an indictment provides probable cause of the presumption in favor of detention"); *United States v. Stenger*, 536 F. Supp. 2d 1022, 1025 (S.D. Iowa 2008) ("Probable cause to believe that the Defendant committed the alleged [offense] is provided by the Grand Jury's indictment in this case"); *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) ("Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act"). Moreover, Marshall has not specifically asserted in any of his relevant filings that probable cause was lacking. *See generally* Filing 134; Filing 179; Filing 180. Nor does Marshall contest that this is a case in which the presumption under 18 U.S.C. § 3142(f)(1)(B)–(C) applies. *See generally* Filing 134; Filing 179; Filing 180. Thus, the Court concludes there is probable cause to believe that Marshall committed the offenses alleged in the Superseding Indictment, and, therefore, the presumption Marshall should be detained pending trial pursuant to 18 U.S.C. § 3142(e)(1) applies.

The next question the Court must answer is whether Marshall has met his "limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *Abad*, 350 F.3d at 797. Marshall has attempted to meet his burden here by submitting several exhibits for the Court's consideration. *See* Filing 134; Filing 179. The Court has considered all matters submitted by Marshall in this respect, including the letters authored by his parents, his pastor, his brother, various friends, a business associate, and a psychologist. *See* Filing 134-3; Filing 134-4; Filing 134-7 While the bulk of these letters provide generally positive opinions as to Marshall's character, some of them specifically address his community ties and involvement, his risk of flight,

and his ability to comply with conditions of pretrial release. *See e.g.*, <u>Filing 134-3</u> at 2–3; <u>Filing 134-4 at 1-2</u>. Based upon these materials, the Court assumes without deciding that Marshall has come forward with evidence sufficient to meet his "limited burden of production" that "he does not pose a danger to the community or a risk of flight." *Abad*, 350 F.3d at 797.[6] However, it is important to note that even if Marshall has satisfied this limited burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.*

### B. Consideration of the Factors under § 3142(g) Warrant Detention

As stated previously, the Court has concluded that the Government met its burden of proving "by a preponderance of the evidence that [Marshall] presents a serious risk of flight." *United States v. Cook*, 87 F.4th 920, 925 (8th Cir. 2023); *see also United States v. Maheshwari*, 358 F. App'x 765, 766 (8th Cir. 2010) ("When claiming that a pretrial defendant poses a flight risk, the government's evidentiary burden is preponderance of the evidence."). The Court will now address why the factors set forth in 18 U.S.C. § 3142(g) warrant this determination. *See Cook*, 87 F.4th at 924 (noting that "the § 3142(g) factors, which govern the § 3142(e)(1) inquiry, are relevant both to determining whether [a defendant] presents a serious risk of flight and whether there are conditions of release that will reasonably assure [the defendant's] appearance") (cleaned up)).

---

[6] In *Abad*, the defendant "introduced the Pretrial Report, letters from members of his community, and evidence [the defendant's] family [was] willing to act as third-party custodians." *Abad*, 350 F.3d at 798. The defendant also showed that "if he fail[ed] to appear for trial, his family [would] forfeit a $65,000 equity interest in the parents' . . . home." *Id.* The district court concluded that the defendant in that case "met his burden of production to rebut the detention presumption" and on appeal the Eighth Circuit "conclude[d] the district court did not clearly err" in so finding. *Id.* Ultimately, however, the Eighth Circuit reversed the district court's decision to release the defendant because even if the defendant had rebutted the statutory presumption, "the government proved, (1) by clear and convincing evidence , [the defendant was] a danger to the community; and, (2) by a preponderance of the evidence, [the defendant was] a flight risk." *Id.* at 800.

1.  *The Nature and Circumstances of the Offenses Charged — § 3142(g)(1)*

The first factor set forth in § 3142(g) directs courts to consider, "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device[.]" 18 U.S.C. § 3142(g)(1). Count I of the Superseding Indictment alleges an offense involving a controlled substance—specifically, that Marshall and others conspired to distribute and possess with intent to distribute 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana and a mixture, compound, and preparation containing THC. Filing 75 at 1. Although Counts II and III allege offenses under Title 18 rather than Title 21, they specifically allege that Marshall's money laundering was related to the "Distribution and Conspiracy to Distribute and Possess with Intent to Distribute Marijuana and THC . . . in violation of Title 21 United States Code, Sections 841 and 846[.]" Filing 75 at 2–3. Therefore, while Count I directly alleges a violation of the Controlled Substances Act under Title 21, all three Counts alleged against Marshall involve unlawful activity related to controlled substances.

While violations of the Controlled Substances Act are not uncommon, Count I alleges a wide-ranging conspiracy to distribute over 1000 kilograms of contraband that not only spanned over two decades in length but also involved eleven different named defendants. *See* Filing 75 at 1–2. The offense alleged in Count I is not a run-of-the-mill drug distribution conspiracy in violation of 21 U.S.C. § 846. Count I instead charges that Marshall was involved in a large scale drug-trafficking operation—a consideration the Eighth Circuit has repeatedly taken into account when determining the propriety of pretrial detention decisions. *See United States v. Cantu*, 935 F.2d 950, 952 (8th Cir. 1991) ("As we said in *United States v. Sazenski,* 806 F.2d 846, 848 (8th Cir.1986),

'we recognize the congressional determination that large scale drug trafficking is a serious danger to the community and . . . that either danger to the community or risk of flight is sufficient to authorize detention.'").

While the risk of danger that large-scale drug trafficking poses is worthy of consideration in its own right, the Court is particularly concerned here with how the nature of the charged offenses provide an obvious incentive to flee. In *Cook*, the Eighth Circuit noted that the defendant's "serious risk of flight and nonappearance [was] obvious" where the defendant faced "a potentially lengthy prison sentence if convicted" and had "not served a prison term before[.]" *Cook*, 87 F.4th at 925; *see also United States v. Stenger*, 536 F. Supp. 2d 1022, 1026 (S.D. Iowa 2008) ("The potential penalty the Defendant faces if he is convicted in this case leads the Court to believe there is some incentive for him to attempt to flee"). These same considerations apply here as well because, if convicted on Count I, Marshall is looking at a statutorily-imposed mandatory minimum term of incarceration of no less than 10 years and a possible sentence up to life. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii); 21 U.S.C. § 846. Counts II and III carry potentially lengthy terms of incarceration as well. *See* 18 U.S.C. § 1956(a)(1) (providing for a sentence of up to 20 years' imprisonment in addition to financial penalties). [7] So while one could argue that Marshall's lack of criminal history is a factor that bodes in his favor, courts have also recognized that when a defendant who has not been to prison before is looking at a significant period of incarceration, the incentive to flee is all the more "obvious." *See Cook*, 87 F.4th at 925; *see also Stenger*, 536 F. Supp. 2d at 1026 (explaining that because defendant had been paroled several times for his past state offenses and only faced sentences of a few years in the state system, the potential decades of

---

[7] To be sure, this Court recognizes and appreciates that "mere charged offenses, alone, are not enough to require pretrial detention." *United States v. Cirksena*, 749 F. App'x 488, 490 (8th Cir. 2019). However, the serious nature of the offenses alleged in this case and the fact that they involve controlled substances, are factors this Court is statutorily required to consider in making its ultimate determination. *See* 18 U.S.C. § 3142(g)(1).

incarceration he faced in the federal system with no possibility for parole led "the Court to believe[] there is some incentive for him to attempt to flee").

Moreover, this serious risk of flight is compounded in cases where, as here, the defendant has considerable financial means and, therefore, is more capable of absconding.[8] As the Government noted in its original filing, "two of the initially five charged defendants absconded after being notified they had been charged[,]" and there is evidence that one of the co-conspirators directed other members of the organization to flee in the event they were charged. Filing 100 at 7. While counsel for Marshall notes, "there is no statement that [Marshall] was a part of that recorded conversation" with this co-conspirator, Filing 134 at 7, the Government pointed out in a subsequent filing that—according to a cooperating witness—Marshall "has provided cash for [this co-conspirator's] defense in order to keep him from cooperating with the government." This is sufficient in the Court's view to establish a clear enough connection between Marshall and the co-conspirator who directed members of the organization to flee.

Finally, the Court acknowledges that there is a statutory presumption in favor of detention. *See* 18 U.S.C. §§ 3142(e)(1)–(f)(1). Even assuming that Marshall met his limited burden of production necessary to rebut the presumption against detention, that presumption still "remains a factor to be considered among those weighed by the district court." *Abad,* 350 F.3d at 797. This statutory presumption continues to weigh in favor of detention, even if it does not compel it based on Marshall's rebuttal evidence. For the foregoing reasons, the Court concludes that § 3142(g)(1) weighs firmly in favor of detention.

---

[8] The Court acknowledges that financial resources as to be considered under § 3142(g)(3) rather than § 3142(g)(1). Because these considerations interrelate, however, the Court briefly addresses them here as well.

2. *The Weight of the Evidence Against Marshall — § 3142(g)(2)*

The second factor set forth in § 3142(g) directs courts to consider "the weight of the evidence against the person[.]" 18 U.S.C. § 3142(g)(2). Through its various submissions, the Government has shown that there is weighty evidence against Marshall on Counts I, II, and III, including statements derived from cooperating witnesses. *See e.g.*, Filing 100 at 7; Filing 168 at 1, 5; Filing 169-6. This factor weighs in favor of detention.[9]

3. *Marshall's History and Characteristics — § 3142(g)(3)*

The third factor set forth in § 3142(g) directs courts to consider "the history and characteristics of the person[.]" 18 U.S.C. § 3142(g)(3). This includes:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

18 U.S.C. § 3142(g)(3)(A)–(B).

With respect to 18 U.S.C. § 3142(g)(3)(B), none of these considerations would appear to apply to Marshall and, therefore, would weigh in his favor. However, some of the factors set forth

---

[9] In his January 8, 2024 submission, Filing 134, counsel for Marshall noted that he did "not have discovery at [that] point in time and is not in a position to speak directly to the weight of the evidence." Filing 134 at 4. However, the Court's Order for the Progression of a Criminal Case that was also filed on January 8, 2024 directed that by January 16, 2024, "if requested, counsel shall confer and accomplish discovery as required under" the applicable Federal Rules of Criminal Procedure. Filing 145 at 1. In Marshall's "Response to the Court's Order Regarding Motion to Revoke Order of Release" that was filed on January 25, 2024, Marshall's counsel did not make any argument regarding the weight of the evidence nor suggest that the Government has failed to comply with its discovery obligations. *See generally* Filing 179. The fact that Marshall has not directly addressed the weight of the evidence against him reaffirms this Court's conclusion that § 3142(g)(2) militates in favor of continued detention pending trial.

in 18 U.S.C. § 3142(g)(3)(A) merit further discussion and analysis.[10] Counsel for Marshall notes that Marshall's "criminal history is limited to a 2013 driving with suspending license" in the State of Tennessee "which was resolved with payment of fine/costs [sic] as listed in his pretrial services report." Filing 134 at 6. However, as previously discussed, Marshall's lack of significant criminal history and the fact he has not previously spent time in prison provide an additional incentive for him to flee given the significant period of incarceration that he faces if convicted on any of the counts alleged against him. At the same time, the Court acknowledges that the lack of criminal history is generally considered a factor weighing in favor of pretrial release. Marshall's lack of a record regarding failure to appear at court proceedings would also be a factor that weighs in his favor, although the Court does not find this factor particularly weighty given that Marshall's limited criminal history necessarily means there is little data upon which to assess his record of appearing for court hearings.

With respect to Marshall's past alcohol and drug use, according to the character letters Marshall has provided, Marshall previously struggled with some manner of substance abuse disorder but is now sober. *See* Filing 134 at 5–6; Filing 134-3 at 5; Filing 134-4 at 1134-7. While achieving sobriety is commendable, the Court does not find this factor to be particularly weighty under the circumstances here—especially as it relates to whether he poses a flight risk in relation to an offense involving a major drug conspiracy. *Cf. Cook*, 87 F.4th at 925 (recognizing that a defendant's efforts to address issues related to her mental health were commendable but did "not overcome the numerous facts that weigh in favor of a serious-risk-of-flight determination").

---

[10] Based on what has been presented to the Court, there does not appear to be anything noteworthy about Marshall's physical or mental condition that would weigh in favor of or against detention.

16

As for Marshall's family ties and community involvement, the letters Marshall has provided paint the picture of an individual who is close to his family and has actively participated in his community. However, the letters Marshall submitted "do not tip the scales when weighed against the government's damning evidence." *Abad*, 350 F.3d at 799. These letters do not directly address the misconduct that Marshall is alleged to have committed. *Cf. id.* at 799 (noting that although the defendant "offered five letters of support from family members and friends . . . none of the letters indicate the writers knew the nature of [the defendant's] alleged crime"). Moreover, the fact that Marshall signed a two-year lease for a place in Los Angeles—which his counsel emphasizes—is hardly persuasive given Marshall's significant financial assets and properties at different locations throughout the country. *See* Filing 168 at 6. As the Government argued before Magistrate Judge Chooljian, its investigation revealed that the Defendant lives "a transient lifestyle."

Ultimately, the Court finds that Marshall's unique financial resources present the most relevant § 3142(g)(3) consideration under the particular circumstances of this case. Unlike many defendants facing significant prison terms for their participation in a drug conspiracy, the Government notes that Marshall is a man of considerable and—in many respects—liquid resources. *See* Filing 100 at 5 (noting that Marshall "had given a cooperating witness at least $4,000,000 in cash to purchase collectable cars and real property for Marshall"); Filing 168 at 5– 6 (noting Marshall's past dealings in millions of dollars in cash, his purchase of a 2023 Ferrari, and his possession of at least two high-end wrist watches with an estimated value of $250,000). As alluded to previously, Marshall not only has a considerable incentive to flee, but his resources make him much more capable of effectively doing so than the average defendant. Additionally, Marshall was not entirely forthcoming in disclosing his financial assets when speaking to the

United States Probation Office prior to his hearing before Magistrate Judge Chooljian. *See* Filing 100 at 3; Filing 168 at 7. Counsel for Marshall states that his client was not as forthcoming because Marshall wanted counsel present at the time. *See* Filing 134 at 2. The Court is not persuaded that this excused Marshall from being candid with pretrial services, especially given the allegations in this case involving money laundering—the very purpose of which is to conceal the ill-gotten nature of assets. Courts have previously recognized that lack of candor in a bond interview is a factor supporting denial of pretrial release. *See e.g.*, *Vang*, 779 F. App'x at 427. When considering all of these circumstances involving Marshall's financial resources, the Court is particularly concerned that they may facilitate an attempt to flee. Again, this concern is especially palpable given that the Government has said one of the co-conspirators Marshall is connected to specifically directed other individuals to flee—and two of them later did so.[11]

4. *The Nature and Seriousness of the Danger to Any Person or the Community — § 3142(g)(4)*

The fourth and final factor set forth in § 3142(g) directs courts to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).[12] As the Court previously noted, the Eighth Circuit has on more

---

[11] The Court notes that Marshall's counsel has said he is currently in physical possession of Marshall's passport. Filing 134 at 3. However, as the Eighth Circuit has previously noted, "[t]aking possession of [the defendant's] passport has little flight deterrence considering the ease of travel to Mexico and Canada." *Abad*, 350 F.3d at 799. Especially given the Defendant's considerable financial means and history of dealing in large amounts of cash and other tangible items of significant value, *see* Filing 168 at 5–6, the Court agrees that counsel's possession of the passport "has little flight deterrence" in this case. *See Abad*, 350 F.3d at 799.

[12] This provision goes on to state:

In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(4).

than one occasion recognized "the congressional determination that large scale drug trafficking is a serious danger to the community[.]" *Cantu*, 935 F.2d at 952 (quoting *Sazenski*, 806 F.2d at 848). The offense alleged in Count I of the Superseding Indictment, especially when considered in tandem with the facts set forth in the Government's various submissions, fits the bill of a large-scale drug trafficking conspiracy. However, the Court acknowledges that the Government does not allege that Marshall has engaged in acts of violence or otherwise continues to participate in any new, large-scale drug trafficking schemes apart from what has been charged. *See generally* Filing 100; Filing 168.[13] Although the Court questions whether danger to the community alone would support detention under the present circumstances, the Court concludes the alleged willingness of Defendant to participate in trafficking of such a large amount of contraband at great personal risk for monetary gain in combination with the Defendant's risk of flight and the dangers any flight would pose cause this factor to favor detention.

### C.  The Government has Proven by a Preponderance of the Evidence that No Condition or Set of Conditions will Reasonably Assure Marshall's Appearance

Collective consideration of the factors set forth in 18 U.S.C. § 3142(g) lead the Court to conclude that the Government has proven, "by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance" and therefore, Marshall should be detained pending trial. *Orta*, 760 F.2d at 891. The statutory presumption in favor of detention is still a factor, even if the Defendant has met his limited burden of production necessary to rebut its automatic application.  When giving consideration to this presumption along with the fact that this case involves a defendant with an obvious incentive to flee and the means to do so,

---

[13] The Government does note that an individual was killed in April of 2018 after he retrieved marijuana from a storage unit which was comingled with marijuana that was on a load destined for Marshall. Filing 168 at 5. However, the Government also notes that the deceased individual "did not work for or sell for" Marshall. Filing 168 at 5.

as well as all other facts and circumstances relevant to the analysis, the Court finds the Government has met its burden.

As a final matter, the Court will also deny Marshall's "Motion to Amend Release Order," Filing 180, that he submitted on January 25, 2024. In this Motion, Marshall "move[d] to amend the currently stayed Order of release as an alternative to revocation of said Order." Filing 180 at 1. Marshall specifically suggested that his parents serve as third-party custodians and that he be permitted to reside with them at their property in Maryland if that location were "deemed an appropriate placement by United States Pretrial Services." Filing 180 at 1. Marshall further submitted that he was "willing to abide by any additional terms and conditions of release this Court believes would assure [his] appearance and safety to the community including but not limited to additional travel restrictions, GPS location monitoring, curfew restrictions, and home detention at the residence of the [third-party] custodians." Filing 180 at 2.

The Court considered these alternatives when ruling on the Government's Motion to Revoke the Magistrate Judge's Release Order. After careful consideration, the Court is not convinced that these additional restrictions will reasonably assure Marshall's appearance. While the Court does not question the good-faith offer of Marshall's parents to serve as third-party custodians, the fact remains that Marshall's risk and means of flight are simply too great for this Court to discount. The Court is simply not convinced that Marshall's parents—well intentioned as they may be—are capable of preventing Marshall from acting on an attempt to flee, especially considering that Marshall apparently deceived them for years about his alleged involvement in a criminal enterprise.

In the character letter they authored, Marshall's parents note that he "frequently visits [their] home in Maryland to get out on the water, fish, watch a movie and on occasion make dinner

exercising his culinary skills." Filing 134-3 at 1. While that may be true, the Government has provided evidence to this Court that between 2015 and 2020, many of Marshall's numerous flights to Maryland also corresponded with FastBox deliveries to Maryland. See Filing 168 at 2–5. There is no indication that Marshall's parents were aware of his involvement in these alleged acts underlying the basis for Count I of the Superseding Indictment during his past trips to Maryland. As such, the Court is not convinced that his parents would be capable of effectively monitoring Marshall in Maryland now. Because the Court has concluded that the Government met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required, Marshall's request for additional restrictions in lieu of detention ultimately fails. The Court will therefore deny his "Motion to Amend Release Order," Filing 180.

### D. This Order Shall Remain Provisionally Sealed for Seven Days

The Court has decided that it is appropriate to seal this Order at this time for several reasons, including the fact that the submissions the Court received from both the Government and Counsel for the Defendant were filed under seal. However, the Court is not convinced that this Order includes information in it that requires it to remain sealed. To the extent either party desires that any portion of this Order remain under seal, it shall within seven (7) days of the date of this Order file a written statement articulating what portions of this Order it believes should remain under seal. Any such statement shall also include citations to legal authority supporting the party's position. Finally, such statement shall also include a proposed, redacted version of this Court's Order as an attachment with the redactions corresponding to the portions of the Order that the party believes should remain under seal. To the extent that either party does not object to unsealing this entire Order, it shall so advise the Court within seven (7) days as well.

## IV.    CONCLUSION

Although the Court believes that the law compels Marshall's continued detention under these circumstances, it has reached this conclusion after careful thought and deliberation. The Court does not lightly discount the positive opinions of the Defendant expressed by others; nor does it quickly dispense with lesser forms of restriction short of pretrial detention that have been proposed. Ultimately, however, the Court's *de novo* review of the matter leads it to conclude that pretrial detention remains warranted here and that the Magistrate Judge's Order of Release should be revoked. Consideration of the factors set forth in 18 U.S.C. § 3142(g) lead the Court firmly to this conclusion. Accordingly,

IT IS ORDERED:

1. The Government's Motion for Revocation of a Release Order, Filing 100, is granted;

2. Marshall's "Motion to Amend Release Order," Filing 180, is denied;

3. This Order shall remain provisionally sealed for seven (7) days. To the extent either party desires that any portion of this Order remain under seal, it shall within seven (7) days of the date of this Order file a written statement articulating what portions of this Order it believes should remain under seal. Any such statement shall also include citations to legal authority supporting the party's position. Such statement shall also include a proposed, redacted version of this Court's Order as an attachment with redactions corresponding to the portions of the Order that the party believes should remain under seal. To the extent that either part does not object to unsealing this entire Order, it shall so advise the Court within seven (7) days as well;

4. Marshall is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

5. Marshall must be afforded a reasonable opportunity for private consultation with defense counsel; and

6. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshall for the purpose of an appearance in connection with a court proceeding.

Dated this 30th day of January, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge